UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-80149-CR-MARRA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSEPH CASTRONUOVO, M.D., and
CYTHIA CADET, M.D.,

    Defendants.
_____/

FILED by _____ D.C.

DEC 14 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO STRIKE AND DISMISS VARIOUS COUNTS OF THE SECOND SUPERSEDING INDICTMENT

THIS CAUSE is before the Court pursuant to an Order of Reference from United States District Judge Kenneth A. Marra [DE 930]. Before the Court are Defendant Joseph Castronuovo's Motion to Dismiss or Strike Various Counts of the Superseding Indictment [DE 906] and Defendant Cynthia Cadet's Motion to Dismiss or Strike Various Counts of the Second Superseding Indictment [DEs 914, 915].[1] The Government filed responses [DEs 916, 924], to which the defendants replied [DEs 921, 931]. A hearing was held on November 19, 2012. Thereafter, at the direction of the Court, the Government filed an amended response to Cadet's Motion to Dismiss or Strike, see DE 948, and Cadet filed a factual proffer specifying those facts she believed showed presumptive or actual prosecutorial vindictiveness in this matter. See DE 962. The matters are now ripe for disposition. For the following reasons, it is respectfully recommended that both motions be **DENIED**.

---

[1] Cadet filed identical motions at docket numbers 914 and 915. The Court treats both of these as a single motion.

## I. Factual and Procedural Background

### A. The First Superseding Indictment

This prosecution has a lengthy and extensive procedural history. For the sake of efficiency, the Court will limit its recitation of the facts to those relevant to the instant motions. On August 12, 2011, the grand jury returned a 104-page superseding indictment against 32 defendants, including Castronuovo and Cadet. First Superseding Indictment, DE 62. The First Superseding Indictment charged Cadet with conspiracy to commit racketeering in violation of Title 18, United States Code, Section 1962(d), conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h), drug conspiracy in violation of Title 21, United States Code, Section 846, and conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 371. Meanwhile, the First Superseding Indictment only charged Castronuovo with a single count of conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 371. Significantly, a violation of Section 371 carries a maximum sentence of five years in prison.

### B. The January 20 Status Conference

On January 20, 2012, Judge Marra held a status conference in this matter. By that time, the only remaining defendants in the case were Castronuovo and Cadet.[2] At the hearing, the Government stated that it anticipated filing a second superseding indictment by February 2012, and that this indictment would charge Defendants Cadet and Castronuovo with drug conspiracy, Cadet with ten deaths, and Castronuovo with no deaths. *See* Transcript of Status Conference 2:18–3:21, DE 898 ("Status Conf. Tr."). When queried by the Court, Castronuovo's counsel admitted he was not ready for trial, and also volunteered that, in light of the Government's

---

[2] 28 of the original 32 defendants eventually pled guilty, while two defendants passed away during the pendency of the case. At the time of the hearing, Defendant Steven Goodman had not yet pled guilty, but had apparently indicated his intent to do so.

2

revelations about its intentions with regard to a second superseding indictment, Castronuovo would be moving for a severance. *Id.* at 5:24–6:5. Subsequent to the hearing, Judge Marra continued the trial to August 6, 2012, *see* DEs 783, 789. The trial was eventually further continued to June 3, 2013. DE 928.

### C. The Second Superseding Indictment

Despite the government's earlier prediction that a Second Superseding Indictment would be returned by February 2012, the grand jury did not in fact return one until July 19, 2012. *See* Second Superseding Indictment, DE 870. The Second Superseding Indictment charges Castronuovo with one count of conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§841(a)(1) and 846, one count of conspiracy to possess with intent to distribute a controlled substance to persons under age 21 in violation of 21 U.S.C. §§ 846, 841(a)(1), and 859(a); two counts of possession with intent to distribute a controlled substance resulting in death in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Additionally, it charges Cadet with one count of conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846; seven counts of possession with intent to distribute controlled substances resulting in death in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); one count of conspiracy to possess with intent to distribute anabolic steroids in violation of 21 U.S.C. §§846, 841(a)(1) and 829(e) ; and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956. Significantly, those counts charging possession with intent to distribute controlled substances resulting in death (Counts 3 through 9 as to Cadet and Counts 10 and 11 as to Castronuovo) carry a maximum penalty of life imprisonment

## II. <u>Vindictive Prosecution</u>

Castronuovo and Cadet argue that the death counts (Counts 10 and 11 as to Castronuovo, and Counts 3 through 9 as to Cadet) in the Second Superseding Indictment are the result of prosecutorial vindictiveness and should therefore be dismissed.

### A. Legal Standard

As a general rule, "[a] prosecutor may seek a superseding indictment at any time prior to a trial on the merits." *United States v. Cole*, 755 F.2d 748, 757 (11th Cir. 1985). "However, a superseding indictment adding new charges that increase the potential penalty would violate due process if the prosecutor obtained the new charges out of vindictiveness. Vindictiveness in this context means the desire to punish a person for exercising his rights." *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006) (citations omitted). Those rights must be "protected" and arise from statue or the Constitution. *See United States v. Goodwin*, 457 U.S. 368, 372 (1982). *See also United States v. Edwards*, 777 F.2d 644, 649 (11th Cir. 1985) (citing *United States v. Del Vecchio*, 707 F.2d 1214, 1216 (11th Cir. 1983)) (prosecutor may not seek superseding indictment for sole purpose of harassing defendant).

The issue of prosecutorial vindictiveness is generally raised in the post-trial context. The Supreme Court has held that where a defendant brings a successful appeal, a prosecutor's decision to later bring heightened charges for the same conduct is presumptively vindictive. *See Blackledge v. Perry*, 417 U.S. 21, 27–29 (1974). This presumption of vindictiveness may be rebutted by a showing of "objective proof which explains or justifies the prosecutor's decision." *United States v. Taylor*, 749 F.2d 1511, 1513 (11th Cir. 1985) (per curiam) (quoting *United States v. Spence*, 719 F.2d 358, 362 (11th Cir. 1983)) (internal quotation marks omitted).

But despite the existence of such a presumption where in the post-trial context, "proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not

4

alone give rise to a presumption in the *pretrial* context." *Barner*, 441 F.3d at 1316 (quoting *United States v. Miller*, 948 F.2d 631, 633 (10th Cir. 1991)) (internal quotation marks omitted). The reasons for this are many. For example, as our Court of Appeals has noted, while there is an institutional bias against the retrial of a "decided question," as in the situation where a defendant appeals his conviction, "there is no such bias against according the defendant his right to trial by jury, and everyone expects a defendant to invoke numerous procedural rights before trial." *Barner*, 441 F.3d at 1317 (citing *Goodwin*, 457 U.S. at 381–83). Moreover, imposing a presumption every time the prosecutor added charges before trial "might inflexibly fetter the prosecutor's discretion . . . . [A]cquisition of additional information or an increased appreciation of the facts previously available to the [Government] might be an inducement to enhance the charges." *United States v. Mays*, 738 F.2d 1188, 1190 (11th Cir. 1984) (per curiam) (citing *Goodwin*, 457 U.S. at 381). *See generally United States v. Jones*, 601 F.3d 1247, 1261 n.5 (11th Cir. 2010) (noting, in post-trial context, that no presumption of vindictiveness arises where prosecutor brings new charges based on independent acts, even where those acts are part of "the same spree of activity").

The law in this Circuit remains unsettled as to whether a presumption can *ever* arise in a pretrial setting. *Barner*, 441 F.3d at 1318. The Court of Appeals has held, however, that "even assuming compelling facts could justify a presumption [of vindictiveness] in a pre-trial setting, such facts would have to form a realistic likelihood of vindictiveness." *Id.* Where no presumption of vindictiveness arises, the defendant bears the burden of showing actual vindictiveness. *Id.* at 1317, 1322.

### B. Castronuovo's Arguments

Castronuovo contends that Counts 10 and 11 of the Second Superseding Indictment should be dismissed because they are the product of a vindictive prosecution. Def.

5

Castronuovo's Mot. to Dismiss or Strike Various Counts of the Second Superseding Indictment at 11–12, DE 906. He argues that the prosecutor in this case, without notice, induced the grand jury to return a second superseding indictment that dramatically increased the possible penalties he faced. Castronuovo concludes that since the second superseding indictment was not brought until after he had refused to plead guilty and had stated his intention to move for a severance, the increased charges were brought to punish him for exercising his constitutional rights. The Court cannot bring itself to make the same leap in logic.

Here, the Government proffers that it only initially charged Castronuovo with a five-year conspiracy count in furtherance of a negotiated disposition because Castronuovo had indicated his intention to plead guilty. Gov't's Resp. to Def. Castronuovo's Mot. to Dismiss or Strike Various Counts of the Second Superseding Indictment at 2, Sept. 7, 2012, DE 916. Castronuovo disputes this and claims that the government's motive in initially charging him with the five-year count was not because he had agreed to plead guilty, but rather "to make it palatable for all defendants to plead guilty and to avoid a trial; and . . . the government believed that Dr. Castronuovo merited less severe treatment because of his age . . . his health . . . and his comparative lack of culpability." Def.'s Reply to Gov't's Resp. at 4, DE 921. Whatever the Government's motive in bringing the initial charge, it is not relevant to the matters at issue. In our adversarial system of justice, the prosecutor has nearly limitless discretion in deciding whom to prosecute and what charges to bring. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). *See also United States v. Nixon*, 418 U.S. 683, 693 (1974) (noting that the Executive Branch has "exclusive authority and absolute discretion to decide whether to prosecute"). *See generally* Gerard E. Lynch, *Prosecution: Prosecutorial Discretion*, in 3 ENCYCLOPEDIA OF CRIME AND JUSTICE 1246 (Joshua Dressler ed., 2d ed. 2002) (describing extent, types of, and constraints on American prosecutorial discretion). Moreover, an initial decision to charge a defendant with a

6

lesser charge does not estop the prosecutor from later seeking additional charges. *United States v. Goodwin*, 457 U.S. 368, 382 (1982). "[T]he initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." *Id.* For these reasons, courts are generally reluctant to interfere with the prosecutorial decision-making process. *See United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000) ("The judiciary cannot interfere with a prosecutor's exercise of charging discretion, except in narrow circumstances where it is necessary to do so in order to discharge the judicial function of interpreting and applying the Constitution.").

*United States v. South*, 295 F.App'x 959 (11th Cir. 2008) (per curiam) (unpublished), is particularly instructive here. In *South*, the defendant was originally indicted for receipt of a firearm, manufacturing a destructive device, and transporting a destructive device. He pled guilty to all three counts pursuant to a written plea agreement. *Id.* at 962. At sentencing, however, after telling the court that he misunderstood the terms of the plea agreement, South was permitted to withdraw his plea. *Id.* at 963. The Government subsequently filed a superseding indictment, charging South with (1) receipt of unregistered firearms; (2) possession of a firearm by a convicted felon; (3) two counts of manufacturing, possessing, and transporting pipe bombs; and (4) possession with intent to distribute five or more grams of methamphetamine. *Id.* The Government additionally filed notice that it was seeking an enhanced penalty pursuant to Title 21, United States Code, Section 851. *Id.* at 963 n.1. South unsuccessfully moved to dismiss the superseding indictment, arguing before the district court that the Government's addition of a drug count that would subject him to a mandatory life sentence was the result of prosecutorial vindictiveness. *Id.* at 963. On appeal, the Eleventh Circuit reasoned that since there was no presumption of vindictiveness in the pretrial context, South was required to show actual vindictiveness. *Id.* at 967. It further held that under the circumstances, where the prosecutor had

7

probable cause to bring additional charges, South had failed to meet that burden. *Id.* at 968 ("There is no constitutional due process violation when the government decides to add new charges after the defendant refuses a plea deal.").

To hold otherwise would be to bring the entire federal criminal justice system to a halt. For better or worse, nearly 97 percent of federal criminal cases are resolved via plea bargain. U.S. Sentencing Comm'n, 2010 SOURCEBOOK OF FEDERAL SENTENCING STATISTICS, Figure C (2011). In order to convince a defendant to forego his constitutional right to a jury trial, prosecutors must offer some incentive. "[I]t is commonplace that a defendant can expect to get a more favorable sentence from a plea bargain than from proceeding to trial and losing; were it otherwise, few defendants would forego their right to a trial." *Barner*, 441 F.3d at 1320.

Castronuovo's other contention that he was penalized for exercising his constitutional right to move for a severance, is also easily rejected. Assuming without deciding that moving for a severance is a "protected right" as contemplated by the Supreme Court in *Goodwin*, the mere fact that Counts 10 and 11 were added after Castronuovo's counsel stated his intention to move for a severance does not give rise to a presumption of vindictiveness. As the Supreme Court has explained:

> [A] defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter.

*Goodwin*, 457 U.S. at 381. In sum, the Court finds that Castronuovo has failed to identify any compelling factors that would raise a "realistic likelihood of vindictiveness" so as to give rise to a rebuttable presumption. *See id.* at 1320–21 . Moreover, he has also failed to come forward with any objective evidence demonstrating that the prosecutor harbored actual vindictiveness.

8

Accordingly, his motion to dismiss Counts 10 and 11 for prosecutorial vindictiveness should be denied.

### C. Cadet's Arguments

In addition to the facts presented by Castronuovo, discussed *supra*, Cadet points the Court to a number of other circumstances that she says demonstrate both presumptive and actual prosecutorial vindictiveness towards her. Accordingly, she requests dismissal of Counts 3 through 9 of the Second Superseding Indictment. The Court has reviewed and considered Cadet's briefs and her extensive factual proffer [DE 962]. Here, however, it will only discuss those facts it deems most relevant to the motion.

#### 1. Lack of Active Plea Negotiations

In her reply brief, Cadet makes an effort to distinguish herself from Castronuovo because while Castronuovo had initially planned to plead guilty and has provided the Government with several nonimmunized proffers, Cadet claims she has never considered pleading guilty and always maintained her innocence. Accordingly, she argues, the rationales of *Bordenkircher, supra*, are inapplicable because in her situation, the "give and take" of plea bargaining was nonexistent. 434 U.S. at 362–63. As the Government points out, however, the Eleventh Circuit has explicitly rejected this distinction. *Barner*, 441 F.3d at 1321. Accordingly, it cannot serve to distinguish Cadet's situation from Castronuovo's.

#### 2. The Spencer Affidavit

Next, Cadet presents the affidavit of Gordon Spencer, Esq. [DE 943][3]. Mr. Spencer is Dr. Cadet's former attorney. According to Spencer, on October 15, 2011, he and Dr. Cadet met

---

[3] Much of Mr. Spencer's affidavit is hearsay. The Court gives little weight to those parts of the affidavit, and instead focuses on those facts within Spencer's personal knowledge. It is also worth noting that the Government vigorously disputes Spencer's assertions, calling them "false, malicious in nature, and outrageous." Gov't's Supp. Response in Opposition to Def.'s Motion to Strike or Dismiss Various Counts of the Superseding Indictment at 3, DE 947.

with members of the prosecution team. At that meeting, the prosecution laid out its evidence against Dr. Cadet. According to Spencer, the prosecutor also made two particularly offensive comments. First, Spencer alleges that the prosecutor stated that "[Cadet] may very well be innocent of knowing the extent of what her employers were up to, but she enabled the process by prescribing the medication and getting paid a ton of money to do it, so she is not getting out of this case." Second, Spencer alleges that the prosecutor admitted that he planned to pursue a case against Cadet based on the Government's belief that she "should have known" what was happening at the clinic. Even accepting these allegations as true, they are not evidence of prosecutorial vindictiveness.

It is black letter law that a defendant charged with conspiracy need not know the full extent of that conspiracy. Rather, once it has established the existence of a conspiracy, the Government need only "come forward with slight evidence to connect a particular defendant to the conspiracy." *United States v. Calderon*, 127 F.3d 1314, 1326 (11th Cir. 1997) (quoting *United States v. Harris*, 20 F.3d 445, 452 (11th Cir.1994)). Moreover, contrary to Cadet's assertions, *see* Defendant Cadet's Factual Proffer at 9 ¶28, DE 962 ("Cadet Proffer"), actual knowledge is not necessarily an element of a drug conspiracy. Under certain circumstances, the Government may prove knowledge by showing that the defendant was deliberately ignorant of the existence of the conspiracy. *United States v. Perez-Tosta*, 36 F.3d 1552, 1564 (11th Cir. 1994); 11TH CIR. PATTERN JURY INSTRUCTIONS (CRIMINAL), Special Instruction 8 (2010). *See also United States v. Garcia-Bercovich*, 582 F.3d 1234, 1237–38 (11th Cir. 2009); *United States v. Peddle*, 821 F.2d 1521, 1524–25 & n.1 (11th Cir. 1987). In essence, then, Cadet asks the Court to draw inferences of vindictiveness from the prosecutor's correct statements of the law. This it cannot do.

### 3. Government's Decision to Seek Pretrial Detention

As evidence of prosecutorial vindictiveness, Cadet also points to the fact that the United States sought to detain her pre-trial, but did not move to detain any of her 31 co-defendants. Def. Cadet's Factual Proffer at 8 ¶ 21. At Cadet's detention hearing, the Government maintained that it was seeking her detention because of her ties to Haiti, and "because she has never confronted her criminality." Transcript of Arraignment and Pretrial Detention Hearing at 3, DE 537 ("Detention Tr."). By contrast, the Assistant U.S. Attorney continued, "out of 32 defendants, 30 are cooperating . . . . 13 doctors, and they have all confronted their criminality and the nature of their actions." *Id.* at 7. The Government also noted its concern that Cadet had moved her children to Haiti, that millions of dollars that moved through her bank accounts were unaccounted for, and that she had virtually no equity in her Florida residences. *Id.* at 8. The Magistrate Judge, after a 92-minute detention hearing, *see* Criminal Court Minutes, DE 351, eventually denied the motion for pretrial detention and released Cadet on bond. Detention Tr. at 60. Although the Government's arguments were ultimately unsuccessful, they were objectively reasonable. Moreover, a review of the First Superseding Indictment reveals that the grand jury (and presumably, the Government) considered Cadet to be the most culpable of the named doctors, repeatedly referring to "defendant physician Cadet and coconspirator physicians." *See* First Superseding Indictment, DE 62.[4] Finally, when the Magistrate Judge offered to stay Cadet's bond to allow the Government to appeal her decision to the District Judge, the Government declined. Detention Tr. at 61. Having considered the entire record in this matter, the undersigned cannot say that the Government's decision to seek detention on Cadet alone gives rise to a "realistic likelihood of vindictiveness."

---

[4] At the time of the detention hearing, the Second Superseding Indictment had not yet issued.

11

### 4. Other Proffered Facts

Cadet also asserts that at a meeting on September 15, 2011, the prosecutor expressed his intention to "go after all the doctors in order 'to make a statement.'" Cadet Proffer at 9 ¶ 28. As an initial matter, the alleged statement is vague and bereft of context. Perhaps more importantly, however, vindictiveness is an individualized inquiry. The question is whether the prosecutor has "a desire to punish *a person* for exercising his rights." *Barner*, 441 F.3d at 1315 (emphasis added). A generalized desire to punish members of a particular profession, particularly in the context of a "pill mill" case that involves a number of doctors as defendants, cannot be viewed as evidence that the prosecutor harbored a vindictive motive against Cadet.

According to Cadet, a co-defendant, Derik Nolan, advised her that at a meeting with the prosecutor, he had tried to convince the Government of Cadet's innocence, but "they did not want to hear it." Cadet Proffer at 7 ¶14. Additionally, Nolan told Cadet it was his opinion that that "they" (presumably members of the prosecution team) did not like her at all. *Id.* The Court finds these statements to be unconvincing. First, the Court is unable to draw any inferences from the Government's alleged refusal to speak with Nolan about Cadet. Second, Nolan's opinion is of little value, especially considering his interest in vouching for Cadet, and his personal rapport with her. *See id.* at 6–7.

Finally, the prosecutor's alleged refusal to allow Cadet to take a polygraph, *id.* at 7 ¶ 17, is of no moment. A prosecutor saying that a particular action was "not in [his] interest" is not evidence that he desired to punish the defendant for exercising a constitutional right. He could have had myriad reasons for declining to administer a polygraph. The Court declines to accept Cadet's invitation to ascribe a sinister motive to the prosecutor on the basis of pure conjecture.

### III. Improper Use of the Grand Jury to Bolster Case

Castronuovo next argues that Counts 10 and 11 of the Second Superseding Indictment should be dismissed because the prosecution improperly utilized the grand jury as a means of discovery. As a general rule, the Government may not use the grand jury for discovery where there is already a pending prosecution. *United States v. Alred*, 144 F.3d 1405, 1413 (11th Cir. 1998). However, "it may continue an investigation from which information relevant to a pending prosecution may be an incidental benefit." *Id.* (internal quotation marks omitted). "While the grand jury cannot be used solely or even primarily to gather evidence against an indicted defendant, it can be used to investigate whether a defendant committed crimes not covered in the indictment." *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1214 (11th Cir. 2009) (internal quotation marks omitted). Determining whether a prosecutor has "overstepped" the "fine line" between trial preparation and a continuing investigation "depend[s] on the facts and circumstances of the particular case." *United States v. Flemmi*, 245 F.3d 24, 28 (1st Cir. 2001).

In support of his argument that the grand jury was used improperly, Castronuovo principally relies on the events of the January 20, 2012 status conference. He notes that even though the Government initially indicated that it would file a Second Superseding Indictment by February, that indictment was not actually returned until July. He speculates that the Government spent the extra months "utiliz[ing] the power of the same grand jury to discover additional facts that would further enhance the punishment in the case against Dr. Castronuovo that the Government claims could have been brought in August, 2011." Def. Castronuovo's Mot. to Dismiss or Strike at 11, DE 906. In addition to the length of time it took to return the Second Superseding Indictment, Castronuovo asks the Court to consider the Government's allegedly conflicting statements as to its predictions of the length of trial, and the extent of the

Government's evidence against the defendants in this matter. It is difficult to see any direct connection between those events and the "primary purpose" of the grand jury's investigations prior to the return of the Second Superseding Indictment. Having considered the entire record in this matter, the undersigned finds that Castronuovo has failed to show that the primary purpose of the grand jury's investigation after the return of the First Superseding Indictment was to bolster its evidence on the preexisting charges.

### IV. Whether "Distribute" and "Possess with Intent to Distribute" Should Be Stricken from Count 1 of the Second Superseding Indictment

Count 1 of the Second Superseding Indictment charges Castronuovo and Cadet with conspiracy "to distribute, dispense, and possess with intent to distribute and dispense, a quantity of oxycodone, a Schedule II narcotic controlled substance, outside the scope of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1)." Second Superseding Indictment at 14–15, DE 870. Both defendants ask the Court to dismiss Count 1, or in the alternative, to strike the words "distribute" and "possess with intent to distribute" from the indictment because of their former statuses as lawful prescriber of Schedule II narcotics. Although they present an interesting statutory construction argument, their contention is belied by binding precedent. In *United States v. Harrison*, 651 F.2d 353 (5th Cir. Jul. 1981), the former Fifth Circuit held that it is in fact an offense for a medical doctor to "distribute" narcotics where that distribution is alleged to have been done unlawfully and outside the scope of usual medical practice. *Id.* at 354. That is precisely the case here. Therefore, this contention must also fail.

### V. Mooted Issues

Castronovo's papers argue that Count 2 of the Second Superseding Indictment should be dismissed because it improperly charges a violation of Title 21, United States Code, Section 859

14

as separate offense rather than a sentencing enhancement. However, at oral argument on November 19, 2012, the Government represented that it would be moving to dismiss Count 2. Accordingly, this part of the motion is moot and requires no further analysis.

Finally, Castronuovo and Cadet both contend in their papers that Count 1 should be dismissed because the Government misjoined them in violation of the multiple conspiracy doctrine. Essentially, they argue, because they worked at different pain clinics, they were not part of the same conspiracy and should not be charged as such. Castronuovo made this same argument as part of his motion to sever [DE 877], and the Court rejected it. *See* Order Granting in Part and Denying in Part Motion to Sever at 2, DE 918. In light of this, Castronuovo declined to pursue the claim at oral argument. Accordingly, this claim should also be denied as moot.

## VI. Conclusion

For the foregoing reasons, it is hereby respectfully recommended that Defendant Joseph Castronuovo's Motion to Dismiss or Strike Various Counts of the Superseding Indictment [DE 906] and Defendant Cynthia Cadet's Motion to Dismiss or Strike Various Counts of the Second Superseding Indictment [DE 914, 915] be **DENIED**. The parties are hereby advised that any objections to this Report and Recommendation must be filed in writing with the presiding District Judge within 14 days. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2).

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 14th day of December, 2012.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE