UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-80149-CR-MARRA/MATTHEWMANN (S)(S)

UNITED STATES OF AMERICA,

v.

CYNTHIA CADET, M.D.,

Defendant.
_____/

**DEFENDANT CADET'S MOTION FOR BOND PENDING APPEAL
WITH INCORPORATED MEMORANDUM OF LAW**

COMES NOW the Defendant, Cynthia Cadet, M.D, by and through her undersigned counsel, who respectfully requests this Honorable Court grant her motion for bond pending appeal, pursuant to 18 U.S.C. 3143 and Rule 9(B) of the Federal Rules of Appellate procedure, and in support thereof states as follows:

1. On July 31, 2013, after a jury trial which lasted more than eight (8) weeks, Dr. Cadet was convicted of Count 13 of a 13-count Second Superseding Indictment charging her with conspiracy to commit money laundering in violation of 18 U.S.C.; Dr. Cadet was also acquitted of a conspiracy to distribute oxycodone and she was acquitted of seven counts of unlawful distribution resulting in death.

2. On April 4, 2014, Dr. Cadet was sentenced before Honorable Judge Kenneth Marra to 6.5 years imprisonment.

3. Dr. Cadet is to voluntarily surrender to Coleman Medium Security Camp on June 13, 2014.

4. On April 21, 2014, the undersigned filed a Notice of Appeal on Dr. Cadet's behalf.

## **MEMORANDUM OF LEGAL AUTHORITY**

To qualify for bond pending appeal, Dr. Cadet must establish that, the appeal raises a substantial question of law or fact that, if determined favorably to Dr. Cadet on appeal, is likely to result in reversal or an order for a new trial on all counts for which imprisonment has been imposed. United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985). Title 18 U.S.C. §3143(b) states that:

(b) Release or Detention Pending Appeal by the Defendant.—

(1)Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142 (b) or (c) of this title; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

(i) reversal,

(ii) an order for a new trial,

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142 (b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

The substantial issues to be raised by Dr. Cadet in support of her appeal include the following:

1. Whether there was sufficient evidence presented at trial as a matter of law to support Dr. Cadet's conviction of money laundering.
2. Whether there was fundamental error in the jury instructions which led to the return of inconsistent jury verdicts.
3. Whether the Court erred in the basis used to impose a 6.5 year prison sentence upon Dr. Cadet.

## ARGUMENT

### I. DUE TO FUNDAMENTAL ERROR IN THE JURY INSTRUCTIONS THE JURY RETURNED INCONSISTENT VERDICTS

Defendant Dr. Cadet was convicted of a money laundering conspiracy under Count 13 of the Superseding Indictment despite being acquitted by the jury of all of the underlying drug conspiracy and distribution of controlled substances charges that served as the basis for the money laundering charge. The fact that Dr. Cadet was acquitted of all of the underlying drug conspiracy and distribution charges means that the jury found that she was not part of any conspiracy to distribute controlled substances and that she prescribed controlled substances for a legitimate medical purpose and in the usual course of her professional practice. In other words, the jury concluded that her work as a physician at American Pain was lawful, thereby, rendering the income she earned to be lawfully obtained. As such, it is logically inconsistent for Defendant Dr. Cadet to be innocent of the underlying drug conspiracy and distribution charges and still be guilty of the money laundering conspiracy charges. If the jury had been properly instructed that they could not find Dr. Cadet guilty of money laundering without first finding her guilty of the underlying drug

conspiracy and distribution charges, they would have also found Defendant Dr. Cadet not guilty of the money laundering conspiracy charge. As a direct result of erroneous jury instructions, the jury returned inconsistent verdicts.

Whether inconsistent verdicts render a conviction improper constitutes a question of law, which is a determination that rests with the Court. See United States v. Powell, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984). It has been held that consistency in a verdict is not necessary. Dunn v. United States, 284 U.S. 390, 393, 52 S. Ct. 189, 190, 76 L. Ed. 356 (1932); United States v. Powell, 469 U.S. 57, 62, 105 S. Ct. 471, 475, 83 L. Ed. 2d 461 (1984). Even where a conviction on one count and an acquittal on another count is a logical impossibility, the conviction will stand, **unless it was otherwise obtained in error** [emphasis added]. United States v. Mitchell, 146 F.3d 1338, 1342-45 (11th Cir. 1998).

In United States v. Nelson, 574 F.2d 277 (5th Cir.1978)[1], the defendant was indicted on one of two counts: Count One for bank robbery in violation of 18 U.S.C.S. § 2113(a) and bank robbery with a dangerous weapon in violation of 18 U.S.C.S. § 2113(d). The defendant, however, was not convicted on Count Two - - for using a firearm to commit a felony in violation of 18 U.S.C.S. § 924(c). Notably, during its deliberations, the jury asked the trial court the following questions:

1. "Can one person be convicted on Count One and not Count Two?

2. "If one had knowledge of a weapon, would this constitute use of a weapon?" (*See* Nelson at 282)

**The district court responded in writing, answering:**

1. **Yes, one person can be convicted of Count One and be found "not guilty' of Count Two.**

---

[1] The 11th Circuit Court adopted as binding *precedent* all decisions of the former *Fifth Circuit* handed down prior to October 1, 1981.

2. **If one defendant had knowledge of a weapon this would constitute use of a weapon so long as that defendant aided and abetted and assisted the other defendant who did use the weapon."** (*See* Nelson at 282)

The jury ultimately returned a verdict of "guilty" on Count One and "not guilty" on Count Two. On appeal, the Court found the verdicts to be inconsistent and reversed the conviction on 18 U.S.C. § 2113(d) after concluding that the District Court's jury instructions were erroneous and resulted in the defendant's improper conviction Id. at 279-80. Similar to the Nelson case, the inconsistent verdicts in this case were obtained in error and, therefore, must be vacated.

A. **The Jury Should Have Been Instructed that the Money Laundering Conspiracy Charge Could Not Survive Without Sufficient Proof on the Underlying Drug Conspiracy and Distribution Charges**

Count 13 of the indictment expressly re-alleges and incorporates by reference the allegations made in Count 1 of the Indictment, wherein Defendant Dr. Cadet and Co-defendant Dr. Castronuovo are the only individuals named. It also specifically alleges that Defendants Dr. Cadet and Dr. Castronuovo:

"knowingly and willfully combined, conspired, confederated, and agreed with each other and with other persons known and unknown to the Grand Jury, to commit certain offenses against the United States, in violation of Title 18, United States Code, Section 1957, that is to knowingly engage and attempt to engage in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity" (Emphasis added)

It is further alleged by the government that:

"The specified unlawful activity [emphasis added] is the distribution, dispensing and possession with intent to distribute and dispense, oxycodone, a Schedule II narcotic controlled substance, outside the scope of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1)". (D.E. 870, P. 28)

The language in Count 13 unequivocally imparts that the money laundering count is inextricably intertwined with the distribution charges alleged against Defendants Dr. Cadet and

Dr. Castronuovo outlined in Count 1 of the Indictment. In other words, if the "property" in question was derived from a "specified unlawful activity" and that "activity" is defined as a violation of Section 841(a)(1) specifically as it relates to Defendant physicians Cadet and Castronuovo, because defendants were found **not guilty** of the underlying charge in violation of Section 841(a)(1) as alleged in Count I, the defendants necessarily would need to be acquitted of the money laundering count as well. The plain reading of Count 13 of the indictment can lead to no other conclusion. But, over the objections of defense counsel, rather than instruct the jury accordingly, the Court ruled that the money laundering conspiracy charge was a standalone offense that could survive even if defendants were acquitted of the underlying charges.

B. **The Court's ruling ,regarding the jury instructions in the instant case, was not consistent with other rulings in the 11th Circuit that hold precedence.**

First, the 11th Circuit has expressly recognized that a predicate crime is required to support a money laundering conspiracy conviction. Christo, *supra*, at 579 (holding that it is only after a "predicate crime becomes 'a completed offense'" that a "money laundering can occur." (*See also See also* United States v. Smart, 135 Fed. Appx. 337, 2005 U.S. App. Lexis 1161; United States vs. Silvestri, 409 F.3d 1311, 2005 U.S. App. Lexis 9398, 18 Fla. L. Weekly Fed. C560; United States v. Gregg, 179 F.3d 1312, 1999 U.S. App. LEXIS 14884, 12 Fla. L. Weekly Fed. C 1012; United States v. Stein, 2012 U.S. Dist. LEXIS 132021.) If a predicate offense must be *completed* by the defendant before money laundering can occur, certainly it is implicit that without any predicate offense, there can be no money laundering. Once again, here, since

Dr. Cadet was found to have lawfully prescribed the controlled substances in question, there is no "predicate offense" to support the money laundering conspiracy charge.[2]

In <u>United States vs. Dr. Todd Perla, *et al*</u>,[3] a United States District Court case out of the Middle District of Florida, similar to the instant case, three physicians were charged in Count I with conspiracy to dispense Oxycodone and Xanax not for a legitimate purpose or not in the usual course of professional practice in violation of Title 21 U.S.C. Sections 846 and 841(a)(1). Similar to the instant case, these physicians also were charged in Count III with money laundering conspiracy in violation of Title 18 U.S.C. Sections 1956(h) and 1957. In an unpublished decision[4], the Honorable Timothy J. Corrigan held that if the government was unable to present evidence beyond a reasonable doubt that defendants were guilty of Count I, that defendants could not be guilty of the money laundering conspiracy charge alleged under Count III reasoning that the money laundering conspiracy charge was inextricably intertwined with the underlying drug conspiracy and distribution charges alleged in Count I. In that case, the jury instructions for the money laundering conspiracy charges specifically referenced the allegations in Count I as part of the definition of "criminally derived property" stating the term "means any property constituting or derived from proceeds obtained from the criminal offense charged and defined in Count One of the Indictment, that is, a conspiracy to dispense Oxycodone and Xanax in violation of Title 21, United States Code, Section 841(a)(1) and 846 . . ."[5] Furthermore, in order to avoid an inconsistent verdict, the Verdict form was constructed in a way that precluded the jury from having to decide on the money laundering conspiracy charges

---

[2] Unlike the First Superseding Indictment (D.E. 68) which named 33 different defendants, significantly, Drs. Cadet and Castronuovo were the only named defendants in the Second Superseding Indictment (D.E. 870). The "specified unlawful activity, therefore, would necessarily be only applicable to two of them.

[3] United States v. Dr. Todd Perla, et. al., US District Court Middle District of Florida Jacksonville Division, Case No: 3:11- cr-5(S2)-J-32JRK.

[4] This is an unpublished decision for which the transcript from the Charge Conference held on April 5, 2013 (Case No: 3:11- cr-5(S2)-J-32JRK, D.E. 643) is not yet available for review.

[5] See U.S. vs. Perla, et al, 3:11- cr-5(S2)-J-32JRK, D.E. 653, Jury Instruction No. 12, pg. 19.

alleged in Count III if they did not find the defendants guilty of the drug conspiracy and distribution charges alleged in Count I.  Thus, following the instructions for completion of the form as to Count One, the Verdict form stated in pertinent part:

"(If you found the defendant not guilty as to Count One, you are finished, and the foreperson should sign the verdict form on the following page.  If you found the defendant guilty as to Count One, please answer Count Three on the following page.)"

**US vs. Todd Perla et al was tried in the Middle District of Florida which falls under the same appellate jurisdiction as the instant case. The glaring dichotomy between the jury instructions in the Middle District of Florida versus the Southern District of Florida presents a substantial question of law. If Dr. Cadet had been tried in the Middle District of Florida, once a jury had acquitted her of the underlying drug conspiracy and distribution charges, she would have necessarily been acquitted of the conspiracy to money launder.**

Even more, in United States vs. Ward, 197 F.3d 1076, 1999 U.S. App. LEXIS 32100, 13 Fla. L. Weekly Fed. C 229 (11th Cir. Fla. 1999) the United States appealed a judgment of acquittal granted on three counts of a six-count indictment charging the defendant, among other things, with bankruptcy fraud and money laundering, after a jury found him guilty on all six counts.  One of the counts for which he was acquitted (Count VI) alleged that Ward knowingly and willfully conducted or attempted to conduct monetary withdrawals involving proceeds of a specified unlawful activity with the intent to conceal and disguise the location, source, ownership and control of these proceeds in violation of 18 U.S.C. Section 1956.  In determining whether or not the acquittal on the money laundering charge should be overturned, significantly, the Court evaluated whether or not there was sufficient evidence to support any of the underlying charges brought against the defendant.  To obtain a conviction under § 1956(a)(1)(B)(i), the court

reasoned that the government had to prove beyond a reasonable doubt "that the party engaged in the transaction knew that the funds used represented, in whole or in part, proceeds of a specified unlawful activity. <u>Ward</u> at 1082 (Quoting <u>United States v. Cancelliere</u>, 69 F.3d 1116, 1119 (11th Cir.1999)).  The Court further reasoned that the term "specified unlawful activity" included bankruptcy fraud - - one of the underlying offenses charged in defendant's indictment as Count III.  The 11th Circuit court ultimately held that since **"there is sufficient evidence to support Count III, the money laundering count is still viable notwithstanding the lack of evidence for Counts IV and V.** <u>Ward</u> at 1082.  In other words, if there was insufficient evidence to support any of the counts for the underlying charges (Counts III, IV or V), the money laundering charge would no longer be viable.

It is clear from the ruling in <u>Ward</u> that the money laundering charge would not have survived without the evidentiary support from one of the underlying offenses charged in the indictment.  In <u>Ward</u>, the 11th circuit court found that the money laundering charge necessarily flowed from the underlying charges.  And, thus, without the requisite evidence to prove the underlying charges beyond a reasonable doubt, the court would have upheld the lower court's acquittal on the money laundering charge.

In accordance with the aforementioned precedents, this Court should have also found the money laundering conspiracy charges in the instant case to be inextricably tied with the allegations made in Count I against Dr. Cadet in the Indictment.  Had the jury instructions been constructed to better reflect the link between the two offenses and/or if the Verdict form had been constructed similar to the one in the <u>Perla</u> case where the jury did not reach the question of guilt on money laundering since they ruled not guilty on the underlying charges, the jury would not have erroneously returned inconsistent verdicts.  Given this Court's ruling on this issue in

this case, the jury instructions and verdict form were not properly constructed to avoid the return of an inconsistent verdict. As a result, the jury wrongly convicted Dr. Cadet on Count 13. As such, the verdict must be vacated.

## II. THE UNITED STATES PRESENTED INSUFFICIENT EVIDENCE AT TRIAL TO SUSTAIN DR. CADET'S CONVICTION FOR CONSPIRACY TO COMMITT MONEY LAUNDERING

In making a determination about the sufficiency of the evidence to sustain a conviction, the court need only determine "whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt based on the evidence" presented at trial. United States v. Hassoun, 2007 U.S. Dist. LEXIS 85684 (see also United States v. Ward, 197 F.3d 1076 at 1079 (11th Cir. 1999). Given the evidence presented during the trial, no reasonable trier of fact could have concluded that Dr. Cadet was guilty of the money laundering charges beyond a reasonable doubt. More specifically, the government failed to produce sufficient evidence that Dr. Cadet's funds derived from illegal activity or that Dr. Cadet was aware of a conspiracy to launder money or agreed to join such a conspiracy.

In order for Dr. Cadet to be found guilty of money laundering, among other things, the government needed to prove that Dr. Cadet engaged in monetary transactions with property derived from a "specified unlawful activity". Title 18 U.S.C. Section 1957(a) (*See also* Anderson v. Smithfield Foods, Inc., 209 F. Supp. 2d 1270 (M.D. Fla. 2002), where the court held that money that Defendant legally obtained through the operation of its business did not constitute money derived from specified unlawful activities. Id at 1275. As such, since the money earned by Dr. Cadet was lawfully earned, it could not constitute money derived from a "specified unlawful activity."

In the instant case, the evidence at trial clearly established that Defendant Dr. Cadet was an independent contractor of American Pain whose compensation was based on a per patient rate of $75 for each patient she treated.[6]  Significantly, Dr. Cadet was not paid a salary by the clinic nor did she receive a percentage of overall revenue or profits generated by any of the clinic's illegal activity.  Rather, as the evidence at trial revealed, as an Independent Contractor, Dr. Cadet was compensated similar to the clinic's external vendors (referred to as "outside services") and paid as a business expense as opposed to out of the business' profits.  Christopher George, himself, testified that Dr. Cadet's compensation derived from a portion of the patient visit fees - - receiving $75 of the $150 (or $200 for an initial visit) patient visit fee.  Thus, Dr. Cadet's earnings were not a product of the clinic's unlawfully obtained funds.  In finding Dr. Cadet innocent of the underlying drug conspiracy and distribution charges, the jury obviously concluded that there was insufficient evidence to establish that Dr. Cadet knowingly, willfully or intentionally took part in the conspiracy or prescribed medication outside the scope of her professional practice and not for a legitimate purpose.  In other words, they determined that her practices and treatment of her patients while working at American Pain was lawful.  If Dr. Cadet's practices were in fact lawful, her income, which she generated as a result of her lawful practices, was earned legitimately.  If the payments she received were lawfully derived from legitimate work, it certainly could not have derived from any "specified unlawful activity".  Therefore, the jury's determination that Dr. Cadet was practicing medicine in accordance with the law rendered it virtually impossible for Dr. Cadet's deposits to constitute money laundering as defined under Section 1957.

---

[6] While not relevant to the money laundering charge, Dr. Cadet also received an additional cash payment of $1,000 per week which she received for providing the clinic with access to her DEA registration number to order medication on her behalf.

To the extent that the government may argue that Dr. Cadet's checks were, nevertheless, criminally derived since her lawfully earned money was commingled with proceeds criminally derived by the other physicians and/or managers at American Pain, such a claim would be misplaced here. In <u>Ward</u>, *supra*, in deciding how the commingling of legal and illegal funds should be handled for purposes of a money laundering charge, the court held:

"that the value of the funds at issue should not be confused with the government's burden of proving that the funds involved were proceeds of a crime. This implicates the design element of the money laundering statute which requires proof "that the funds used in the charged transaction were derived in substantial measure from 'specified unlawful activities' rather than from other legal or illegal conduct." <u>Ward</u> at 1083. *See also*; <u>United States v. Jackson, 935 F.2d 757 at 840</u> (7th Cir 1993); <u>United States v. Garcia-Emanuel, 14 F.3d 1469, 1474 (10th Cir.1994)</u>.

This holding makes clear that what is relevant are the proceeds of the "specified unlawful activities" and not the fact that such monies may or may not have been commingled with other legally or illegally earned money. Here, since the proceeds deposited by Dr. Cadet were legitimately earned, as stated above, it could not constitute proceeds earned from "specified unlawful activities." As such, the government failed to meet this burden and the verdict must be vacated accordingly.

Where a conspiracy is charged, the government has the burden of showing that the defendant conspired to launder or engage in a monetary transaction involving the proceeds of specified unlawful activity'" <u>United States v. Soto, 399 Fed. Appx. 498, 2010 U.S. App. LEXIS 20949 (11th Cir. Fla. 2010)</u>; *see also* <u>United States v. Khanani, 502 F.3d 1281, 1295 (11th Cir. 2007)</u>. In <u>Soto</u>, for example, at trial the Government presented evidence that Soto and Diaz agreed that they needed to conceal their involvement in a Medicare fraud scheme. Thus, they agreed to recruit several individuals to cash the checks which allowed them to obtain the money paid by Medicare, which were written by Soto and Diaz to appear as though they were for

legitimate business purposes. The 11th Circuit court found the evidence sufficient to establish the conspiracy. The evidence presented at trial in the instant case, however, fell far short of meeting this burden.

The government failed to present any evidence specifically tying Dr. Cadet to any money laundering conspiracy. While there was an abundance of testimony presented on the drug conspiracy case regarding how American Pain was a cash business, that large cash deposits were made daily, and that Dr. Cadet received a portion of her payments in cash ($1,000 per week for DEA registration) - - all of which was permissible under the law - - no testimonial or documentary evidence was presented by the government demonstrating that Dr. Cadet <u>conspired to engage in a monetary transaction with property derived from specified unlawful activity</u>, as is required under 1957. In fact, there was no testimony offered regarding any conversations, meetings or otherwise between Dr. Cadet and any of the actual conspirators to serve as evidence tying Dr. Cadet to any money laundering conspiracy.

### III.     <u>THE COURT USED AN ERRONEOUS BASIS TO IMPOSE AN EXCESSIVE 6.5 YEAR PRISON SENTENCE UPON DR. CADET.</u>

After an eight week (8) jury trial, Dr. Cadet was convicted of conspiracy to commit money laundering. In addition, the jury concluded that the evidence presented by the government in the instant case was insufficient to prove that Dr. Cadet had knowledge of any conspiracy to distribute controlled substances outside the course of her professional practice and not for a legitimate medical reason. At sentencing, however, despite the jury's verdict of an acquittal for Dr. Cadet on the conspiracy to distribute controlled substances, this Court concluded that it was "impossible" for Dr. Cadet not to have become aware of a conspiracy to distribute controlled substances after six months of working at American Pain. Here, this Court showed a blatant disregard for the verdict reached by the jury after over eight weeks in trial. On this basis, despite the jury's acquittal of Dr. Cadet for any conspiracy to distribute controlled substances, the Court

erroneously concluded that Dr. Cadet's sentencing for the money laundering conviction should be based on the amount of money she earned during her last 9 months at the clinic during which time it would have been "impossible" for Dr. Cadet to have been unaware of a conspiracy to distribute controlled substances. While a district judge is entitled to disagree with a jury's verdict, he or she cannot disregard it and sentence the defendant as if it had been as the judge wished.  Furthermore, this Court further concluded that it could not justify a sentence that did not include prison time for Dr. Cadet in light of all the codefendants physicians who took plea bargains and are still serving jail sentences. Again, this Court has failed to consider that unlike the codefendants who sit in jail today, Dr. Cadet has maintained her innocence from the beginning of this case, she went through a trial lasting over eight( 8) weeks in order to defend her innocence, and most importantly, unlike the imprisoned codefendants, after over eight (8) weeks of evidence, videos, witness testimony, etc. , Dr. Cadet was acquitted in a jury trial of any conspiracy to distribute controlled substances outside the course of her professional practice and not for a legitimate medical reason. The codefendant physicians who are currently serving jail sentences have taken plea bargains and therefore been charged with money laundering  already confessing to knowledge and participation in a conspiracy to distribute controlled substances outside the course of professional practice and not for legitimate medical reasons. To equate Dr. Cadet's position at her sentencing hearing to admittedly guilty conspirators who elected to take a plea bargain is a substantial issue to be raised at appeal. The Court erroneously supplanted its own conclusions for the jury's verdict. The jury, in fact, determined that it was possible that Dr. Cadet was not aware of any conspiracy to distribute drugs outside the course of her professional practice and not for a legitimate medical reason; Dr. Cadet was subsequently acquitted of those charges.

The 6.5 year prison sentence imposed upon Dr. Cadet was ultimately based on money earned for conduct which was determined by the jury to be within the course of Dr. Cadet's professional practice and for a legitimate medical reason. Dr. Cadet never attempted to conceal or disguise any of the compensation she received nor did she use any of it to conduct transactions to promote further unlawful activity. Moreover, Dr. Cadet never engaged in transactions designed to avoid the transaction reporting requirement (i.e. making deposits of less than $10,000 in order to avoid scrutiny). In fact, Dr. Cadet routinely deposited multiple checks covering more than one pay period at the same time. She simply deposited the compensation received for the medical services she provided; services which were determined by the jury to be within the course of Dr. Cadet's professional practice and for a legitimate medical reason. Thus, for this court to base Dr. Cadet's 6.5 year sentence on money she legitimately earned within the course of her professional practice and on the fact that confessed conspirators who took plea bargains are serving jail sentences is erroneous and a substantial issue for appeal.

### IV. DR. CADET HAS DEMONSTRATED THROUGH CLEAR AND CONVINCING EVIDENCE THAT SHE IS NOT A RISK OF FLIGHT OR A DANGER TO THE COMMUNITY

It should be noted that the charge for which Dr. Cadet has been convicted is of a non-violent nature. Moreover, none of the charges Dr. Cadet faced at trial were for violent crimes. Therefore, Dr. Cadet does not pose any physical threat to the safety of the community or any person individually.

Moreover, Dr. Cadet was granted release on bond prior to the aforementioned trial. She did not participate in any illegal activity or violate any other laws during the pre-trial period. Furthermore, Dr. Cadet timely appeared on all dates where her attendance was required. As such, Dr. Cadet has shown no propensity for violence, did not flee in the face of an indictment

comprised of 13 counts where she faced a potential life sentence if found guilty, and she has demonstrated trustworthiness by appearing at every scheduled appearance for which her presence was required.

Additionally, Dr. Cadet has no incentive to engage in any conduct similar to that which she was convicted and/or charged. Dr. Cadet's freedom pending appeal will be contingent upon her good behavior. Moreover, Dr. Cadet is well aware that any deviation from behavior becoming of a model citizen would likely result in her incarceration during this time period.

## **CONCLUSION**

Dr. Cadet has raised substantial questions of law which will likely prevail on appeal, and has established that she will not flee and that she does not pose a danger or threat to the safety of the community at large or any person individually. Thus bail should be set pending appeal.

WHEREFORE, the Defendant, Cynthia Cadet, M.D., respectfully requests that this Honorable Court grant the relief requested herein.

**CERTIFICATE OF SERVICE**

      I hereby certify that on **May 30, 2014**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

      **s/ Michael D. Weinstein**
Michael D. Weinstein
Florida Bar No. 157236
12 SE 7th Street, Suite 610
Fort Lauderdale, FL 33301
Tel: (954) 761-1420
Fax: (954) 761-1421
Email: mdw@mdwlawfirm.com

Attorneys for Defendant Cynthia Cadet, M.D.

      **s/ Jessie M. Djata Attorney at Law**
Jessie M. Djata, Esq.
560 State Street
Brooklyn, NY 11217
Tel: (917) 501-7958
Email: jessiedjata@gmail.com

Attorney for Defendant Cynthia Cadet, M.D.
Appearing Pro Hac Vice